United States Court of Appeals,

Eleventh Circuit.

No. 94-6802.

In re Bruce Craig SMITH, Debtor.

COMMERCIAL FEDERAL MORTGAGE CORPORATION, Plaintiff-Appellant,

v.

Bruce Craig SMITH, Defendant-Appellee.

David P. Rogers, Jr., Chapter 13 Standing Trustee, Defendant.

June 26, 1996.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV 94-H-1016-S), James Hughes Hancock, Judge.

Before BIRCH and CARNES, Circuit Judges, and SIMONS[*], Senior District Judge.

BIRCH, Circuit Judge:

This case focuses on whether a debtor, whose primary residence has been sold in a prepetition foreclosure proceeding, but who has retained his statutory right of redemption under Alabama law, can cure his default under the mortgage and redeem his property after the foreclosure sale by paying arrearage through his Chapter 13 plan and maintaining regular mortgage payments outside the plan. Both the district court and bankruptcy court found that the debtor's attempt to reinstate his mortgage through a Chapter 13 plan was proper. We REVERSE. 170 B.R. 708.

I. BACKGROUND

Appellant, Commercial Federal Mortgage Corporation ("Commercial Federal"), held a mortgage on debtor Bruce Craig

[*]Honorable Charles E. Simons, Senior U.S. District Judge for the District of South Carolina, sitting by designation.

Smith's principal residence in the amount of $84,939.[1]   Smith defaulted under the terms of the note and mortgage when he failed to pay the monthly installments when they were due.  On October 18, 1993, Commercial Federal conducted a valid foreclosure sale and purchased Smith's property.  Commercial Federal then sent Smith a letter notifying him that he had ten days to vacate the property, as required under Alabama law.  Smith vacated the property within that time.  Thus he preserved his statutory right of redemption under Alabama Code § 6-5-251 (1993).  On December 29, 1993, Smith filed a voluntary Chapter 13 bankruptcy proceeding.  11 U.S.C. §§ 1301-1330 (1993).  In his Chapter 13 plan, Smith proposed to reinstate the foreclosed mortgage by paying the prepetition arrearage through the plan while maintaining regular monthly payments on the debt directly to Commercial Federal.  The filing of the Chapter 13 petition gave rise to an automatic stay of Commercial Federal's foreclosure proceeding.  11 U.S.C. § 1301.  On January 13, 1994, Commercial Federal moved the bankruptcy court for relief from the stay in order to complete its eviction proceedings.  The bankruptcy court denied Commercial Federal's motion and held that Smith had retained his statutory right of redemption under Alabama law, and that the right of redemption could be exercised according to Smith's Chapter 13 plan.  The bankruptcy court based its decision on *In re Ragsdale,* 155 B.R. 578 (Bankr.N.D.Ala.1993).

Commercial Federal appealed the decision of the bankruptcy court, and argued that Smith lost his right to cure his default on

---

[1]This case originally was consolidated with *In re Linda F. Shaw,* 94-6803.  We grated Shaw's consent motion to dismiss her appeal.

the mortgage on the date of the foreclosure sale of his property. The district court affirmed the decision of the bankruptcy court, and found that, although other circuits have held that the date of the foreclosure sale is the ultimate "cut-off" date on which the statutory right of redemption is lost, cases in the Eleventh Circuit support the principle outlined in *In re Ragsdale,* "that a debtor could cure his prepetition default on his home mortgage by making payments through the Chapter 13 trustee, and simultaneously maintain his regular mortgage payments directly to the claimant, notwithstanding the fact that the prepetition default had already resulted in a foreclosure sale." *Commercial Fed. Mortgage Corp. v. Smith,* 170 B.R. 708, 710 (N.D.Ala.1994). Commercial Federal appealed the district court's ruling.

## II. ANALYSIS

The issue presented by the parties is whether 11 U.S.C. § 1322(b) permits a debtor to exercise his state statutory right of redemption in a Chapter 13 plan by "curing" a default and "reinstating" a mortgage after a valid foreclosure sale of his property. We review the conclusions of law of the bankruptcy court and the district court *de novo.* *In re Sublett,* 895 F.2d 1381, 1383 (11th Cir.1990). The facts of this case are not in dispute.

The property rights of a debtor in a bankruptcy estate are defined by state law. In Alabama, a mortgagee holds legal title to the real property subject to the mortgagor's equitable right of redemption. Ala.Code § 35-10-26 (1993). Alabama foreclosure law provides that, upon a foreclosure sale, a mortgagor's equitable right of redemption ends. *FDIC v. Morrison,* 747 F.2d 610, 613

(11th Cir.1984), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). "[F]oreclosure of a mortgage extinguishes the debt to the amount of the purchase price, if that amount is less than the debt, or extinguishes the entire debt if the purchase price is more than that amount." *Davis v. Huntsville Prod. Credit Ass'n,* 481 So.2d 1103, 1105 (Ala.1985). The purchaser at the foreclosure sale then holds legal title to the property, subject to the mortgagor's one year statutory right of redemption. Ala.Code § 6-5-248(a) & (b).

The only way to exercise a statutory right of redemption under Alabama law is for the mortgagor to make a *lump sum* cash payment of the entire purchase price paid at the foreclosure sale, plus interest, taxes, and "all other lawful charges." Ala.Code § 6-5-253(a). Smith claims that this provision of Alabama law does not prevent him from reinstating his mortgage through a Chapter 13 plan.

Smith first argues that he has a property interest in his Alabama statutory right of redemption, which became property of the bankruptcy estate. Smith claims that the property interest should be included in the bankruptcy estate pursuant to 11 U.S.C. § 541(a).[2] Although section 6-5-250 of the Alabama Code characterizes the statutory right of redemption as a mere personal privilege and not property or a property right, it is still a right that becomes property of the bankruptcy estate under the broad

---

[2]Section 541 provides that a bankruptcy estate is comprised of, among other types of property, "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1)(1988).

definition provided in Bankruptcy Code section 541.  *See Wragg v. Federal Land Bank,* 317 U.S. 325, 63 S.Ct. 273, 87 L.Ed. 300 (1943); *In re Saylors,* 869 F.2d 1434, 1437 (11th Cir.1989).

Section 1322 of the Bankruptcy Code provides that a Chapter 13 plan "may ... provide for the curing or waiving of any default." 11 U.S.C. § 1322(b)(3).  The plan also "may ... modify the rights of holders of secured claims, *other than* a claim secured only by a security interest in real property that is the debtor's principal residence."  11 U.S.C. § 1322(b)(2) (emphasis added).  Under section 1322(b)(5), however, a plan "may ... provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."  11 U.S.C. § 1322(b)(5).[3]

---

[3]In 1994, section 1322 was amended.  The amended section 1322 provides in pertinent part that:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) *until such residence is sold at a foreclosure sale* that is conducted in accordance with applicable nonbankruptcy law.

11 U.S.C. § 1322(c)(1) (Supp.1996) (emphasis added).

The 1994 amendments do not apply with respect to cases commenced before October 22, 1994.  Smith filed for bankruptcy on December 29, 1993, and, therefore, this subsection is not applicable to his case.  It should be noted, however, that if we were to apply the amended version of section 1322, the foreclosure sale of Smith's property most likely would have cut off his ability to cure the default on his mortgage. *See In re Sims,* 185 B.R. 853, 867 (Bankr.N.D.Ala.1995) (holding that the amended section 1322(c)(1) unambiguously prohibits the debtor from

Smith concludes that "[i]t logically follows that the debtor should be able to exercise the right of redemption through his Chapter 13 plan." Brief of Appellee at 11 (footnote omitted). Smith argues that the reasoning of *In re Ragsdale,* 155 B.R. 578, should be followed in this case. Commercial Federal claims that the analysis of the bankruptcy court in *In re McKinney,* 174 B.R. 330 (Bankr.S.D.Ala.1994), is the proper approach.

The Ragsdales were borrowers under a promissory note, secured by a mortgage on their residence. *In re Ragsdale,* 155 B.R. at 580. The Resolution Trust Corporation ("RTC") conducted a foreclosure sale of the property and was the successful bidder at the sale. *Id.* Nine days later, the Ragsdales filed a petition under Chapter 13 of the Bankruptcy Code. *Id.* The Ragsdales' Chapter 13 plan included a proposal "to cure the default on the mortgage indebtedness to the RTC by paying the arrearage through the Chapter 13 Trustee, and to pay post-petition installments directly to the RTC." *Id.* The RTC objected to the Ragsdales' proposed plan and claimed that, under Section 1322(b)(3), the Ragsdales could not cure a default in the mortgage, and, under Section 1322(b)(5), the debt was no longer a "long-term debt." *Id.* The bankruptcy court in *In re Ragsdale* pronounced that it was not persuaded by the reasoning of the "leading case" that discusses treatment of a debtor's mortgage in Chapter 13, *In re Glenn,* 760 F.2d 1428 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), and noted that:

reinstating the mortgage under a Chapter 13 plan where there has been a prepetition foreclosure sale).

> This Court does not view allowing a debtor to utilize Chapter 13 to keep his home and eventually pay the entire debt owed on it as unleashing a variety of ills on the home mortgage industry. Nor does this Court feel that allowing a debtor to cure a default on a home mortgage will "decrease the attractiveness of home mortgages as investment opportunities," as the Sixth Circuit suggests.

*In re Ragsdale,* 155 B.R. at 583 (quoting *In re Glenn,* 760 F.2d at 1434) (footnote omitted).

The *In re Ragsdale* court reasoned that the statutory right of redemption is a property right that survives the filing of a bankruptcy petition and, therefore, it may be exercised through a Chapter 13 plan. *Id.* at 585. The bankruptcy court then concluded that the statutory right of redemption need not be exercised under the Chapter 13 plan "strictly by the terms of state law," but that it could be "used to bring the debtor's interest into the Chapter 13 plan, where it may be dealt with as an accelerated debt." *Id.* at 586. The bankruptcy court further stated that "[t]his Court ... holds that where a debtor files a Chapter 13 petition following a foreclosure sale of his residence, he may pay the pre-foreclosure sale arrearage through the Chapter 13 trustee, while maintaining payments under the terms of the original contract." *Id.* at 586.

In *In re McKinney,* a case with facts nearly identical to those of *In re Ragsdale,* the bankruptcy court rejected the *In re Ragsdale* court's reasoning and held that:

> [A]fter a foreclosure sale occurs, there is no "unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due." There is also no "default" to cure or waive. Therefore, there is no ability to cure and maintain mortgage payments under 11 U.S.C. § 1322(b)(3) or (5).

*In re McKinney,* 174 B.R. at 335. The bankruptcy court determined that, when the debtor's property was sold at the foreclosure sale,

title passed to the purchaser, and the mortgage was extinguished. *Id.* at 338. It stated that because "[s]ection 1322 allows modifications only to the extent there exists something to modify[,] [o]nce the debtors' claim to title is extinguished at the foreclosure sale, § 1322(b) is no longer applicable." *Id.*

The Sixth Circuit case, *In re Glenn,* is discussed in both *In re Ragsdale* and *In re McKinney,* and we find its analysis to be persuasive. *In re Glenn,* 760 F.2d 1428. *In re Glenn* was the consolidation of three appeals, two of which involved debtors who filed Chapter 13 petitions after their property had been sold at foreclosure sales but before their statutory redemption periods had expired. *Id.* at 1429-30. The Sixth Circuit reasoned as follows:

> All courts agree that at some point in the foreclosure process, the right to cure a default is irretrievably lost; however, the statute itself provides no clear cut-off point except that which the courts may see fit to create. The closer that point of finality is to the beginning of the process, the greater is the protection accorded the mortgage holder, and, hence, the more attractive the home mortgage becomes as an investment. Conversely, the further down the line the court can reach to protect the debtor from the consequences of his default, the better the debtor's needs are met by the Chapter 13 proceedings, and the more attractive those proceedings become to such debtors.

*In re Glenn* at 1435 (footnote omitted). The court then drew a bright-line termination date of the right to cure a default through a Chapter 13 plan as the date of the sale of the mortgaged property. *Id.* at 1435. We agree with the Sixth Circuit's selection of this termination date and the reasons it articulated for choosing this date. *See id.* at 1435-36.[4] While Smith retained

---

[4]Several other circuits have reached similar conclusions in cases where there was a prepetition foreclosure sale. *Matter of Boyd,* 11 F.3d 59, 60-61 (5th Cir.) (holding that, under Mississippi law, a valid foreclosure cuts off all rights to the

his statutory right of redemption after filing his Chapter 13 petition, he cannot modify that right of redemption under a Chapter 13 plan that is filed after a foreclosure sale.

Smith claims that our holding in *In re Saylors* dictates a decision in his favor. 869 F.2d 1434. The issue in *In re Saylors* was whether a Chapter 13 plan could cure a home mortgage arrearage when the underlying mortgage debt had been discharged through a Chapter 7 proceeding. *Id.* at 1436. We found "that a home mortgage debt is transformed into a nonrecourse obligation when the debt is discharged in a chapter 7 case." *Id.* We held that the rights of the debtor, including the equitable and statutory rights of redemption, are not modified upon the receipt of a Chapter 7 discharge. *Id.* The *In re Saylors* debtor still retained his equitable right of redemption, because, although there had been a Chapter 7 discharge of the debt, there had been no foreclosure sale. We found that either a statutory or equitable right of redemption is a property right "sufficient to give a bankruptcy court jurisdiction over a debtor's home," but we did not hold that

property, including the mortgagor's right of redemption, and, therefore, a Chapter 13 plan filed after the foreclosure sale could not include a provision for monthly mortgage payments), *cert. denied,* --- U.S. ----, 114 S.Ct. 2103, 128 L.Ed.2d 664 (1994); *Justice v. Valley Nat'l Bank,* 849 F.2d 1078, 1080 (8th Cir.1988) (holding that, "[b]ecause a foreclosure sale extinguishes the mortgage contract[,] ... the provisions of Chapter 12 relating to the debtor's power to cure defaults and modify the rights of secured creditors are not applicable after a foreclosure sale has been held"); *Matter of Tynan,* 773 F.2d 177, 179 (7th Cir.1985) (rejecting debtor's argument that statutory redemption period should be tolled until Chapter 13 plan is completed, and concluding that to do so "would cloud every title secured through a foreclosure sale due to the possible filing of a voluntary petition in bankruptcy during the statutory redemption period").

the bankruptcy court could modify the terms of a statutory right of redemption, which is what Smith urges us to do in this case. *Id.* at 1437.

Furthermore, this case also is distinguishable from our recent decision, *In re Hoggle,* 12 F.3d 1008 (11th Cir.1994), where we concluded that a confirmed Chapter 13 plan could be modified to allow a debtor to cure a *postconfirmation* default pursuant to section 1322(b)(5). *Id.* at 1012. In *In re Hoggle,* we found that the statutory scheme of Chapter 13 was intended to allow flexibility in an individual's plan to cure defaults, even those occurring after a Chapter 13 plan has been confirmed. *Id.* at 1010-11. The flexibility of a Chapter 13 plan does not, however, extend to debts that have been satisfied through a foreclosure sale. We must strike a balance between the rights of a debtor under the bankruptcy laws and the legitimate economic interest in encouraging lenders to invest in home mortgages. The line drawn by other circuits, and now by us in applying Alabama law, is at the foreclosure sale.[5]

---

[5]A foreclosure sale may introduce a third party into the relationship between the mortgagor and mortgagee, a good faith purchaser. While the good faith purchaser buys the property at the foreclosure sale with the knowledge that the mortgagor retains a one-year statutory right of redemption, he does not purchase with the knowledge that if the mortgagor files for bankruptcy, the redemption period under a Chapter 13 plan will be extended, thus further clouding the purchaser's title to the property. Although this case did not involve a third-party purchaser, we foresee problems with allowing the interests of third-party purchasers to be clouded in this way. *Cf. In re Thompson,* 894 F.2d 1227, 1230 & n. 6 (10th Cir.1990) (concluding that "[p]urchase by an independent third party at a foreclosure sale raises enough additional concerns to justify ending the right to cure in bankruptcy at that point," but declining to hold the same when the purchaser at foreclosure is the mortgagee).

## III. CONCLUSION

We are persuaded by the reasoning of *In re McKinney* and *In re Glenn* and hold that, when a debtor files for Chapter 13 bankruptcy following the foreclosure sale of his property, he can cure the default through an exercise of his Alabama statutory right of redemption. This right cannot be modified under a Chapter 13 plan, and it must be exercised as dictated under Alabama law by making a lump sum payment within one year of the foreclosure sale that includes the principal, interest and other charges under the mortgage. Accordingly, we REVERSE the district court's decision in this case.