**In re James WILLIAMS d/b/a Recovery Zone, Debtor.**

**No. 99–33722.**

United States Bankruptcy Court, E.D. Tennessee.

March 22, 2000.

---

11. *See supra* note 1.

12. The Consent Order did not direct that these funds be held in an interest-bearing account.

Bailey, Roberts & Bailey, P.L.L.C., N. David Roberts, Jr., Knoxville, TN, for Morequity, Inc.

John P. Newton, Jr., Knoxville, TN, for the Debtor.

Gwendolyn M. Kerney, Knoxville, TN, Chapter 13 Trustee.

### MEMORANDUM ON MOTION TO TERMINATE AUTOMATIC STAY

RICHARD S. STAIR, Jr., Chief Judge.

Before the court is the Motion to Terminate Automatic Stay, to Allow Possession of Property filed by Morequity, Inc. on November 17, 1999. The Brief of Morequity, Inc. and the Debtor's Brief in Opposition to Relief from Stay were filed on January 12, 2000.[1] A hearing was held on February 2, 2000.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(G) (West 1993).

### I

On September 10, 1999, at 10:43 a.m. eastern daylight time, the Debtor filed his petition under Chapter 13 of the Bankruptcy Code. The Debtor included his residence, located at 4616 Emory Road in Knoxville, Tennessee, in his Schedule of Real Property. Pursuant to a Deed of Trust executed by the Debtor and Mary K. Williams on August 13, 1997, the residence secured the Debtor's obligation to Morequity, Inc. under a Balloon Note executed by the Debtor and Mary K. Williams on the same date. The maturity date under the Balloon Note is August 18, 2012. Prior to his bankruptcy, the Debtor defaulted under the terms of the note and Morequity, Inc. foreclosed on the residence. On September 8, 1999, two days before the Debtor filed his petition, Morequity, Inc. was the successful bidder at the foreclosure sale of the Debtor's residence. Morequity, Inc.'s bid of $78,007.71 constituted a credit bid of its debt. The Debtor, in his Chapter 13 Plan, proposes to pay Morequity, Inc. its contract maintenance payment of $783.83 and to cure an arrearage listed at $9,800.00.

Randy W. Hardison, the Successor Trustee under the Deed of Trust, testified in a January 12, 2000 deposition that he was employed by Morequity, Inc. to foreclose on the Debtor's residence; that Morequity, Inc. bought the residence with its winning bid of $78,007.71 on September 8, 1999; that he executed a Successor Trustee Deed for the sale on September 10, 1999, at 8:30 a.m. central daylight time which equates to 9:30 a.m. eastern daylight time; and that he did not receive notice of the bankruptcy until 2:15 p.m. central daylight time on September 10, 1999. The Successor Trustee Deed was not recorded before the Debtor commenced his bankruptcy case and remains unrecorded.

### II

The issue before the court is whether the Debtor's residence was property of the estate at the commencement of his Chapter 13 case such that he may provide for the payment of Morequity, Inc.'s claim in the manner permitted under

---

1. Morequity, Inc. also filed an Objection to Confirmation of Chapter 13 Plan which was overruled on January 21, 2000, because it was not filed within the time required by E.D. Tenn. LBR 3015–3.

11 U.S.C.A. § 1322(b)(5) (West 1993), or whether the foreclosure sale conducted by Morequity, Inc. was final prior to the commencement of the case, divesting the Debtor of his interest in the property.

■ Property of the estate includes, with certain exceptions not relevant here, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a) (West 1993). The filing of a bankruptcy petition triggers the automatic stay which binds all those with knowledge of the case until it is properly lifted. *See Walker v. Midland Mortgage Co. (In re Medlin),* 201 B.R. 188, 193 (Bankr.E.D.Tenn.1996). Bankruptcy Code § 362(a) details the various actions that may violate the automatic stay, which involve attempts by creditors to possess, collect, recover, or create and perfect a lien in property of the estate or to recover claims that arose against the debtor before the commencement of the case. *See* 11 U.S.C.A. § 362(a) (West 1993). If the foreclosure sale of the Debtor's residence became final prior to the commencement of his case, then the residence did not become property of the estate and is not protected by the automatic stay.

■ In *In re Johnson,* 213 B.R. 134 (Bankr.W.D.Tenn.1997), *modified after reh'g,* 215 B.R. 988 (Bankr.W.D.Tenn. 1997), the court analyzed the finality of a foreclosure sale in Tennessee. The court explained that "[f]or the last 175 years, Tennessee has consistently required the exchange of consideration and the satisfaction of the statute of frauds before a foreclosure sale is deemed final." *Johnson,* 213 B.R. at 137. Under Tennessee law, "the fall of the auctioneer's hammer is not alone sufficient to satisfy the statute of frauds requirement." *Id.* (quoting *Black v. Black,* 185 Tenn. 23, 202 S.W.2d 659, 662 (1947)). Satisfaction of the statute of frauds, as is necessary under TENN.CODE ANN. § 29–2–101 (Supp.1999), requires a writing which evidences " 'an existing and binding contract.' " *Id.* at 136 (quoting *Black,* 202 S.W.2d at 662). When the writing takes the form of a deed, the "deed must be executed before the statute may be deemed satisfied." *Id.* (citing *Black,* 202 S.W.2d at 662).

Because the creditor presented no evidence that the two requirements under Tennessee law had been met, the court would not confirm the pre-petition foreclosure sale at issue. *See id.* at 137–38. Upon reconsideration of the matter, in which the creditor provided evidence that consideration had been exchanged and the statute of frauds requirement had been met pre-petition, the court confirmed the foreclosure sale. *See In re Johnson,* 215 B.R. at 989. The creditor proved that an exchange of consideration occurred on the date of the sale by submitting the affidavit of the Substitute Trustee who stated that the creditor had used a credit bid against its debt and that credit bids are "customary in the realm of foreclosure sales in which the mortgagee bids on the property being sold." *Id.* at 990; *see also Ottarson v. Dobson & Johnson, Inc.,* 58 Tenn.App. 408, 430 S.W.2d 873, 875 (1968) (recognizing debt cancellation as consideration). The creditor proved also that the statute of frauds was satisfied by the pre-petition preparation of a Substitute Trustee's Deed. *See Johnson,* 215 B.R. at 990. Although the deed was not recorded prior to the commencement of the debtor's case, the court found that "the mere preparation satisfies the statute of frauds." *Id.*

In the present matter, the foreclosure sale was held on September 8, 1999. The Debtor does not dispute that the sale was conducted in accordance with the required processes. The sale was final under Tennessee law before the Debtor filed his petition. As with the creditor in *Johnson,* Morequity, Inc. used a credit bid against its debt and the Successor Trustee Deed was prepared and executed before the Debtor filed his petition.

## III

The Debtor argues that the Successor Trustee Deed did not comply with TENN.

CODE ANN. § 67–4–409(a)(6)(A) (1998) or § 35–5–104(b) (1999) and therefore that the foreclosure sale was not completed prior to the bankruptcy. He argues that § 35–5–104(b) requires that deeds be in a recordable form. Section 35–5–104(b) provides as follows:

> The deed memorializing the sale shall, in addition to such other requirements as may now or hereafter exist under the laws of the state with respect to the proper form of deeds, in order that they might qualify for recording in the various offices of registers of counties in this state, whenever the provisions of subsection (a) have required notice to be given to the United States and/or to this state, state that the land described therein is conveyed subject to the rights of the United States to redeem the land as provided for in 26 U.S.C. § 7425(d)(1) and/or is subject to the right of this state to redeem the land as provided for in § 67–1–1433(c)(1), as appropriate, shall have attached thereto, as exhibit(s), a copy of the notice thus provided to the United States, a copy of the written response of the United States to the notice thus provided, if any, a copy of the notice thus provided to the state, and a copy of the written response of the state to the notice thus provided, if any, as appropriate.

TENN.CODE ANN. § 35–5–104(b).[2]

It is evident from reading this provision that it is not a requirement governing the validity of deeds memorializing sales or a requirement that deeds be in a recordable form. Rather, § 35–5–104(b) sets forth the requirements that must be met in order for specific deeds to be in a recordable form. Further, § 35–5–104(b) states that it applies "whenever the provisions of subsection (a) have required notice to be given to the United States and/or to this state." *Id.* Subsections 35–5–104(a)(4) through (9)

require that the United States and/or the state of Tennessee receive notice of sales of land in which they have or assert liens. *See id.* at (a). The Debtor does not argue that the United States or Tennessee have or assert liens in the Debtor's residence. The validity of the Successor Trustee Deed is not subject to the requirements of TENN. CODE ANN. § 35–5–104(b).

The Debtor argues that the Successor Trustee Deed did not comply with TENN. CODE ANN. § 67–4–409(a)(6)(A), which sets forth a tax payable for the privilege of recording deeds for the transfer of property. It provides at § 67–4–409(a)(6)(A) that the grantee, the grantee's agent, or the grantee's trustee must state under oath and on the face of the instrument the consideration exchanged. This statute is inapplicable in the present matter. The Successor Trustee's Deed was not recorded and recording was not necessary for the finalization of the foreclosure sale. A foreclosure sale is final in Tennessee when consideration is exchanged and the statute of frauds is satisfied. *See Johnson,* 213 B.R. at 137. Execution of a written contract satisfies the statute of frauds. *See id.* As explained in *Johnson,* recording is not necessary. *See Johnson,* 215 B.R. at 990.

Even if § 67–4–409(a) did apply, the Successor Trustee's Deed does include a statement of the consideration exchanged, stating that Morequity, Inc., "the highest and best bidder thereof, became the purchaser of said property for the sum of Seventy Eight Thousand Seven and $^{71}/_{100}$ Dollars ($78,007.71)" and that the Successor Trustee "for and in consideration of a premises and the payment of the sum stated above, the receipt of which is hereby acknowledged, hereby transfers and conveys to [Morequity, Inc.] . . . the following described property . . . ."

---

**2.** Although the Debtor refers to TENN.CODE ANN. § 35–4–104, he quotes TENN.CODE ANN. § 35–5–104(b). Section 35–4–104 deals with the "[u]niformity of construction and inter-

pretation" trust funds under the Uniform Common Trust Funds Act, TENN.CODE ANN. § 35–4–101 to 105 (1996 & Supp.1999), and is not relevant here.

Finally, the Debtor argues that it would be inequitable for the court to grant Morequity, Inc.'s request for relief from the automatic stay because the Successor Trustee Deed was completed less than two hours before the Debtor filed his petition. He cites no authority for that position. Although the amount of time involved in the present matter was small, that fact does not change the result under the law. Had the Debtor filed his petition just before the execution of the Successor Trustee Deed, Morequity, Inc. would be making the same argument now advanced by the Debtor. The inevitable fact of the matter is that one party's action had to be second. Here, the filing of the Debtor's petition occurred second, after the sale and the events that made the sale final under Tennessee law.

## IV

The sale of the Debtor's residence to Morequity, Inc. was final before the Debtor filed his petition. The residence did not become property of the estate under 11 U.S.C.A. § 541(a) and is not protected by the automatic stay. Morequity, Inc.'s Motion to Terminate Automatic Stay, to Allow Possession of Property will be granted.